" Rosina Filicaza ", Petitioner, *v.* " Guido Filicaza ", Respondent.*

Domestic Relations Court of the City of New York, Family Court, New York County, May 17, 1948.

* The opinion as filed sets forth the true names of all parties but as here published substitutes fictitious names and disguises certain other details, in consonance with the spirit of section 52 of the Domestic Relations Court Act of the city of New York (L. 1933, ch. 482, as amd.).

*Abraham Wolfson* for petitioner.

*William Sostchen* for respondent.

SICHER, J.  On April 1, 1948, there was filed a petition, in the prescribed form, praying for a support order.

On April 8, 1948, Justice MARCHISIO ordered a physical examination of petitioner, investigation as to the earnings of both parties, and an adjournment to May 3, 1948, for hearing.

At the conclusion of such hearing I indorsed on the petition: " * * *. Conceded that parties were duly married on December 5, 1942 and are still husband and wife.  On November 7, 1947 petitioner instituted in the Supreme Court, New York County, an action for annulment on the ground of fraud. Respondent as defendant in that action entered notice of appearance but filed no answer.  At a March 17, 1948 hearing before Official Referee Clinton T. Horton petitioner and her attorney presented proofs and the referee adjourned the hearing (without date) for further proof.  No formal order of discontinuance has been entered, so that such action is still pending; and this Court's jurisdiction under a petition filed in this Court on April 1, 1948 is therefore limited to an order predicated on alleged likelihood of petitioner's becoming, or already being, a public charge.  A separation agreement was executed on Jan-

uary 28, 1948 and received in evidence for its bearing on Dom. Rel. Ct. Act, § 137, subd. 5, and also on the question whether it is such an agreement that, if duly complied with, this Court would have no present jurisdiction whatsoever. (See *Jenkins* v. *Jenkins*, 179 Misc. 905.) Stipulated that Court may consider the Bellevue Hospital report as to petitioner's condition as well as Form 55 showing her employment until April 30, 1948. * * *. Procure transcripts of accounts. Decision reserved. * * *''

After study of the briefs and the entire record I am constrained to dismiss the petition, without prejudice, however, to a new petition when and if jurisdictional facts later arise (see Rules of Practice, Dom. Rel. Ct. of City of N. Y., Family Court Division, rule XXXI, subd. (d) ; Bender's Court Rules [1st ed.], p. 373).

Petitioner has been gainfully employed almost continuously since the marriage; from January 3, 1948, through April 10, 1948, her part-time weekly earnings, in a clerical position paying $32 for a forty-hour week, averaged $26.19 per week. And the May 3, 1948, Bellevue Hospital report of the ordered April 28, 1948, examination of her in the General Medical Clinic of its Out-Patient Department states: '' The general physical condition of this patient is good. Primary difficulty is nervousness. She should be able to do part-time work.''

It appears also that petitioner quit her job after the filing of the petition.

Moreover, petitioner admitted that she still has a residue of savings of at least $300; the actual balance in her savings bank account of May 11, 1948, was $453.84. So, if she presently applied to the Department of Welfare of the City of New York for assistance, her application would not be accepted.

The undefended annulment action doubtless stemmed from the *mutual* desire of the parties to terminate by that device an unsatisfactory marital relationship, although it is apparent from the minutes of the March 17, 1948, hearing before Referee Horton that the requisite evidence was then completely lacking. Nevertheless, the referee did not dismiss the complaint but adjourned the action '' for further proof without date ''. Accordingly, until petitioner elects to abandon such action and enters a formal order of discontinuance, the annulment action is still pending. The situation here presented is therefore in essence the same as that which evoked the controlling pronouncement in *Costa* v. *Costa* (247 App. Div. 192, 193) that the likeli-

hood of petitioner's becoming a public charge " constitutes the only basis for the exercise of jurisdiction by the Domestic Relations Court during the pendency in the Supreme Court of an action for a separation between the parties."

There is no difference in principle between the effect, upon inception of this court's jurisdiction, of the pendency of a separation action and the pendency of an action for annulment or divorce. For, in each such instance there is equally operative the doctrine of prior election of forum (*Colson* v. *Pelgram*, 259 N. Y. 370, 375; see also " *Varney* " v. " *Varney* ", 178 Misc. 165, 168; *Bergen* v. *Bergen*, 186 Misc. 34); while a wife is already seeking from the Supreme Court an adjudication of the marital status she may not turn simultaneously to this Family Court except on a showing that the community would be burdened with her support unless this court, as the sole tribunal having such power, orders the husband to discharge his duty to exonerate the City of New York from such burden (see *People* v. *McCarthy*, 257 N. Y. 567, affg. 139 Misc. 746; *People* v. *Schenkel*, 258 N. Y. 224; cf. *Levy* v. *Levy*, 54 N. Y. S. 2d 554).

The foregoing disposes of the instant proceeding. But it may not be amiss to add comment to guide, if not wholly deter, any further steps in this court.

The entry of an order of discontinuance of the annulment action will not, alone, pave the way for and sustain a new petition for support according to respondent's means and the circumstances of the respective parties (under N. Y. City Dom. Rel. Ct. Act, § 92, subds, 1, 3; § 101, subd. 1). Even if the provision in the January 28, 1948, separation agreement for waiver of all future support be void as violative of section 51 of the Domestic Relations Law (*Kyff* v. *Kyff*, 286 N. Y. 71; *Jackson* v. *Jackson*, 290 N. Y. 512), that agreement and the consensual annulment action have created a state of separation by mutual consent. It follows that a bona fide reconciliation offer from the wife to the husband is a condition precedent to an action for separation (*Batchelor* v. *Batchelor*, 295 N. Y. 544; *Solomon* v. *Solomon*, 290 N. Y. 337) and likewise to a comparable proceeding in this court for an order of support according to respondent's " means and station in life " (see " *Cannon* " v. " *Cannon* ", 190 Misc. 677, 684).

Besides, for her self-respect and peace of mind and as therapy for her nervousness, petitioner should resume gainful occupation and shun " alimony-mindedness ". This court has had frequent occasion to observe the deteriorating effects of " ali-

mony-mindedness " on a childless wife who aggravates the misery of the marriage failure by over-absorption in her disappointment and concentration on vindictive efforts to exact from the estranged husband support which she might otherwise herself earn in a fuller and emotionally more self-satisfying measure.

This petitioner should also bear in mind that she is in the very situation which would follow a successful conclusion of the annulment action; a judgment as sought therein would end all right and expectation to look to respondent for support.

On the other hand, respondent may be not only callously ungenerous but also pursuing a penny-wise, pound-foolish policy in rigidly standing on technical defenses at this juncture. The decent, and long-term prudent, course for respondent might be voluntarily to help tide petitioner over a brief period of readjustment to the collapse of the annulment scheme and relieve her from the tensions of the drain on her dwindling savings while pulling herself together.

It is suggested also that petitioner might profit from consultation at a Mental Hygiene Clinic and from case work guidance by a social service private agency.

Notice shall be given to the parties pursuant to the sub-joined direction.