" EDITH MORTON ", Petitioner, *v.* " PETER MORTON ", Respondent.*

Domestic Relations Court of the City of New York, Family Court, Bronx County, June 16, 1950.

* The opinion as filed sets forth the true names of all parties but as here published substitutes fictitious names and disguises certain other details, in consonance with the spirit of section 52 of the Domestic Relations Court Act of the City of New York (L. 1933, ch. 482).

*John P. McGrath, Corporation Counsel (Rose Schneph* of counsel), for petitioner.

*Walter J. Hopkins* for respondent.

SICHER, J. There is presented the recurrent question whether an order of this court for support of a wife has been made inoperative by a subsequent constructive-service, sister-State decree of divorce procured by the husband without personal service upon the wife or her appearance by attorney within such other State.

The parties intermarried at New York City on November 10, 1940.

Their union has been childless.

According to the probation bureau chronological record entries covering interviews with the parties in 1947 during a period of unsuccessful efforts at reconciliation before institution of a formal proceeding by the filing of a support petition on November 5, 1947, the marriage had been disrupted by petitioner's emotional immaturity as an overprotected daughter, respondent's alleged refusal to procreate children, the long separation occasioned by respondent's military service, respondent's unhappiness at living in the home of his parents-in-law after discharge from the army, and the alleged, but denied, infatuation of petitioner for another man during respondent's war absence.

At the conclusion of a hearing on December 3, 1947, Justice POLIER stated: " There are no arrears at the present time. Respondent has net earnings of $40.12 a week. Petitioner is ill and in need of medical care, according to the medical report. On the testimony submitted at this time, Petitioner is entitled to support. The temporary order is made permanent — as long as the marriage continues. If the parties subsequently make an adjustment out of court, they will advise you, Mrs. Drout. First payment 12/6/47.'' Thereupon Justice POLIER entered a formal order accordingly and indorsed on the petition: " No arrears. Order, $10 week. First payment 12/6/47 (based on average net earnings of $40.12). Pet. is ill. Res. also receiving $13 per month disability.''

Respondent complied with such order until April 4, 1949. He then ceased deposits because of his procurement of a constructive-service Nevada decree of divorce on March 31, 1949.

Petitioner did not again return to this court or raise any question about arrears until April 25, 1950.

Thereupon respondent moved to vacate said December 3, 1947, order as at March 31, 1949, on the ground that he had on the latter date been granted a Nevada decree of divorce predicated on his alleged legal residence in Nevada from November 18, 1948, to September 14, 1949.

A duly introduced copy of that decree constituted presumptive evidence of the jurisdictional facts entitling it to full faith and credit in this court (*Matter of Holmes,* 291 N. Y. 261, 273; *Matter of Franklin* v. *Franklin,* 295 N. Y. 431; *Maloney* v. *Maloney,* 51 N. Y. S. 2d 4; *Esenwein* v. *Commonwealth ex rel. Esenwein,* 325 U. S. 279). But that presumption was overcome by evidence developed on two hearings before me within the right, preserved by *Williams* v. *North Carolina* (317 U. S. 287; 325 U. S. 226) of the original domiciliary State to make its independent determination of the *bona fides* of the alleged new domicile and to refuse to recognize a default decree procured by a spouse who, the original domiciliary forum determines, contrary to the finding of the granting State forum, had in truth not acquired a genuine new domicile.

Since *Williams* v. *North Carolina* (*supra*) there has been a flood of opinions in which decision turned on whether the particular facts established to the satisfaction of the New York court a bona fide new domicile. Such opinions in the aggregate manifest a marked purpose to repudiate constructive-service, default decrees on the ground that the purported domicile in the granting forum State was actually sham. However, growing familiarity with that weight of authority has resulted in factual situations in which the spuriousness of the purported new domicile is no longer crystal clear; under advice of counsel sojourns in the granting-forum State have been lengthened beyond the originally typical situation previously thus described: " The tourist plaintiff cocked one eye askance at the examing justice while solemnly swearing intention to remain permanently in the divorce forum State and with the other eye anxiously watched the courtroom clock in nervous concern about catching the afternoon train ' back home.' " (" *Standish* " v. " *Standish* ", 179 Misc. 564, 570.)

Thus, the facts in the case at bar are not so flagrant nor quite so free from doubt. But the record as a whole falls within the ambit of the sound principle that " where there has been but a brief sojourn in another State, default decrees should be set aside upon slight additional evidence that there was no

intention of remaining indefinitely " (*Forster* v. *Forster,* 182 Misc. 382, 387) and it justifies the conclusion that respondent has not sustained the onus of *clear* and *convincing* proof of a change of domicile from New York to Nevada. (See *Reese* v. *Reese,* 179 Misc. 665, affd. 268 App. Div. 993; *Matter of Newcomb,* 192 N. Y. 238, 251 and *Shuart* v. *Shuart,* 183 Misc. 270.)

True, respondent remained in Nevada several months after the entry of the March 31, 1949, decree and continued his bartender employment there from November 18, 1948, to August 1, 1949; also, before tendering on September 30, 1948, his resignation, effective October 15, 1948, from his clerical position of many years with X Life Insurance Company, he took a short course in bartending, and on returning to New York City he joined a bartenders' local union and allegedly for several weeks sought a bartender job before resuming his identical former clerical position.

But it is apparent that he went to Nevada for the primary, if not sole, purpose of procuring in that State of easy requirements the divorce he had requested petitioner, and she had refused, to let him procure in New York State. Already on January 18, 1949, he sent to petitioner a letter asking for a notice of appearance in the contemplated Nevada action, writing: " I am asking my lawyer to forward to you papers on or about February 1 that require your signature with the hope that you will realize its the only sensible thing to do. * * * If you sign the papers we'll both be better off and we'll have a fair chance at a better future with no complications for either of us. * * * Should you sign the papers so we both may seek happiness elsewhere, I will continue to make the weekly payments of $10.00 for a period of six months after the divorce is granted ".

There is little force in counsel's argument that because respondent's resignation from the X Life Insurance Company position forfeited certain seniority rights not revived by his subsequent re-employment, such September 30, 1948, resignation strongly evidences an intention to abandon his New York City domicile and live permanently in Nevada. Obviously, a request for leave of absence, in lieu of resignation, would be patently inconsistent with a later plea of having quit New York City permanently. Moreover, it is significant that in the above-mentioned January 18, 1949, letter to petitioner he stated that he had " resigned from my position with the " X Company " much to my regret, *due to the present circumstances* ", and that in his September 30, 1948, letter of resignation, offered in evidence but excluded under objection as a self-serving declara-

tion, he made therein the following substantial admission, saying: " My reason for leaving the Company's service at this time is *due to a trip* I intend to make out West and because *I do not know when and if I shall return to New York. If* I do return to the City I trust you will reconsider my reemployment". (Emphasis supplied.)

" We held in *Williams* v. *North Carolina,* 317 U. S. 287; 325 U. S. 226, * * * (2) that while the finding of domicile by the court that granted the decree is entitled to *prima facie* weight, it is not conclusive in a sister State but might be relitigated there. And see *Esenwein* v. *Esenwein,* 325 U. S. 279." (*Estin* v. *Estin,* 334 U. S. 541, 543 [DOUGLAS, J.].)

The issue herein is close. But for the foregoing legal reasons it is now held that respondent's claimed abandonment of his New York domicile for a bona fide Nevada domicile has not been proved by a fair preponderance of the evidence and that the March 31, 1949, Nevada constructive-service default decree of divorce therefore does not constitute a " judgment of any other court of competent jurisdiction, when valid in the state of New York " within the meaning and scope of subdivision 1 of section 137 of the Domestic Relations Court Act of the City of New York (L. 1933, ch. 482, as amd.).

However, by virtue of *Loomis* v. *Loomis* (288 N. Y. 222) such ruling would not be *res judicata* in any declaratory judgment or matrimonial action which either party may, and should, institute in the Supreme Court of the State of New York. The consequent restricted force of that ruling and the availability of such ampler forum to respondent as the procurer of a constructive-service Nevada divorce for an *authoritative* determination of the parties' marital status is further inducement for today's decision.

Because of the present multiplicity of courts in New York City and the lack there of a Domestic Relations Court of general jurisdiction truly answering that name (see article, N. Y. L. J., Sept. 19, 1949, p. 520, col. 1; Bar Bulletin of N. Y. Co. Lawyers Assn., January, 1950, and Virginia Law Weekly, March 9, 16, 1950) the marital status of the parties will remain shrouded in doubt until an adjudication by the Supreme Court of the State of New York, regardless of whether today's Family Court order be affirmed or reversed in the event of appeal. It is therefore urged that respondent promptly institute in the Supreme Court of the State of New York an action for a declaratory judgment that he and petitioner are no longer husband and wife; in which action there will be available to petitioner section 1169-a of the Civil Practice Act, reading: *" Counsel fees and expenses in*

*action to declare validity or nullity of foreign judgment of divorce.* In an action to declare the validity or nullity of a judgment of divorce rendered against the wife who was defendant in any action outside the state of New York and did not appear therein where the wife asserts the nullity of such foreign judgment, the court, in its discretion, during the pendency thereof, from time to time may make or modify an order or orders requiring the husband to pay any sum or sums of money necessary to enable the wife to carry on or defend the action."

Meanwhile, petitioner's application to enforce prospectively the December 3, 1947, order of the Family Court and to collect arrears accrued thereunder left respondent no alternative except to plead there the bar of the March 31, 1949, Nevada decree. Perhaps the lapse of upwards of a year between its entry and petitioner's returning to this court had lulled him into a misbelief in her acquiescence. But the practical necessities of the entire situation now call for respondent's turning to the Supreme Court for an adequate remedy.

However, in any event, nothing in the preceding discussion should be construed as an intimation that if the March 31, 1949, Nevada decree had been deemed effective to terminate the relationship of husband and wife it might still not serve to bar the Family Court from continuing to order support for petitioner as an ex-wife. Rather, if that decree had been found to be based on a bona fide domicile, I should have unhesitatingly applied subdivision 1 of section 137 of the Domestic Relations Court Act of the City of New York (see, for example, " *Standish* " v. " *Standish* ", 179 Misc. 564, *supra*).

Therefore, it may not be inappropriate to explain at length my dissent from two published opinions to the contrary in which, it seems to me, esteemed colleagues have misinterpreted the impact of *Esenwein* v. *Commonwealth* (325 U. S. 279, *supra*) and *Estin* v. *Estin* (334 U. S. 541) on subdivision 1 of section 137 of the Domestic Relations Court Act of the City of New York.

On July 12, 1948, in *Gittelman* v. *Gittelman* (192 Misc. 334) Justice POLIER entered an order for support of a petitioner-wife on the double grounds that " the court is satisfied the respondent failed to establish domicile so as to entitle the Florida decree to full faith and credit and further that even if this were not the case the petitioner is entitled under the decision of *Estin* v. *Estin* to continuing support from the respondent in accordance with his means since the question of support may now be separated from the legal effects of a divorce decree affecting the marital status granted in a sister State." (192 Misc. 334, 337.)

In a colorful opinion, which, however, seems to me materially to overstate the holding and scope of *Estin* v. *Estin* (*supra*) Justice POLIER wrote: "Even if the Florida decree secured by respondent in this case were to be recognized as ending the marital status the petitioner would continue to be entitled to support under the decision of *Estin* v. *Estin* (334 U. S. 541) * * *

"In the instant case, as in *Estin* v. *Estin* (*supra*) New York has a concern with the broken marriage since both parties were domiciled in New York before Florida assumed any concern with the marriage and are continuing residents of NewYork State at the present time. As pointed out by the Supreme Court, New York is rightly concerned lest an abandoned spouse ' be left impoverished and perhaps become a public charge.' (P. 547.)

"The decision of the Supreme Court in *Estin* v. *Estin* establishes a doctrine under which States can develop sound public policy for protecting the rights of spouses to support where they have been abandoned even where the validity of a foreign decree of divorce may not be challenged under the full faith and credit clause." (*Gittelman* v. *Gittelman*, 192 Misc. 334, 336–337, *supra*.)

And on May 28, 1947, after retrial of a proceeding ordered by the Court of Appeals (*Matter of Franklin* v. *Franklin*, 295 N. Y. 431, *supra*), Justice STITT wrote:

"The entitlement of the petitioner to maintenance and support is irrespective of the validity of the Illinois divorce decree obtained by respondent in January, 1930, and rests on the authority of *Esenwein* v. *Commonwealth* (325 U. S. 279, 282–283).

"In that case the basic difference between marital capacity and maintenance and support is pointed out. It is conceded here that the petitioner did not appear or consent nor was she personally served in the Illinois divorce action and, therefore, the divorce decree is not entitled to full faith and credit when it comes to maintenance and support.

"The Court of Appeals in *Matter of Franklin* v. *Franklin* (*supra*) says that consideration should be given to subdivision 1 of section 137 of the New York City Domestic Relations Court Act * * * reading * * *.

"This court is of the opinion that the section just quoted does not preclude the petitioner from entitlement to maintenance and support on the ground that the Illinois decree is not valid in the State of New York as severing her right to maintenance and support under the authority of the *Esenwein* case (*supra*)." (*Franklin* v. *Franklin*, 189 Misc. 442, 443, STITT, J.)

I submit that neither *Estin* v. *Estin* (*supra*) nor *Esenwein* v. *Commonwealth* (*supra*) goes anywhere nearly as far as

Justices Polier and Stitt respectively postulated. Neither of those cases enables the Family Court to enter or enforce an order for a former wife after the marriage relationship will have been terminated by a New York Supreme Court judgment of divorce or by a sister-State divorce decree entitled to full faith and credit insofar as concerns such marriage relationship. For, not only does the *actual* holding in each 'of the *Estin* and *Esenwein* cases (as distinguished from dictum language) not sustain the sweeping interpretation placed upon it by Justices Polier and Stitt in respect of a Family Court proceeding but that interpretation also disregards the unequivocal language of subdivision 1 of section 137 of the Domestic Relations Court Act of the City of New York in its present form as well as the limitation in section 18 of article VI of the New York State Constitution on the power of the Family Court to order support for an *ex-wife*.

*Estin* v. *Estin* (*supra*) held only that the provision for alimony in a prior judgment of separation granted to the wife by the Supreme Court of the State of New York is not voided by a subsequent constructive-service default decree of divorce procured by the husband in Nevada.

That holding is far short of Justice Polier's assumption that it constitutes a pronouncement by the United States Supreme Court that, although every sister State decree of divorce based on a bona fide domicile terminates the relationship of husband and wife, nevertheless the ex-wife may still procure in New York, as the original matrimonial domicile State, a New York State Supreme Court judgment awarding alimony or a Family Court support order, for the first time after entry of such sister-State default decree of divorce.

The sentences from Justice Douglas' opinion which Justice Polier quotes as asserted authority for such a Family Court order must be read in the limiting light of the entire context. Analysis shows that the opinion as a whole seeks merely to furnish a formula of reconciliation between the adjudication in *Williams* v. *North Carolina* (317 U. S. 287; 325 U. S. 226, *supra*) that " a divorce decree granted by a State to one of its domiciliaries is entitled to full faith and credit in a bigamy prosecution brought in another State, even though the other spouse was given notice of the divorce proceeding only through constructive service " (*Estin* v. *Estin,* 334 U. S. 541, 543), on the one hand and, on the other, the doctrine established by *Pennoyer* v. *Neff* (95 U. S. 714) (and untouched by the *Williams* v. *North Carolina's* overruling of *Haddock* v. *Haddock,* 201 U. S.

562) that " we are aware of no power which the State of domicile of the debtor has to determine the personal rights of the creditor in the intangible unless the creditor has been personally served or appears in the proceeding." (*Estin* v. *Estin, supra,* p. 548.)

The two last quotations are also from Justice DOUGLAS' *Estin* v. *Estin* opinion, which opens with the following sentences clearly indicating the foregoing as the actual holding and the limited scope of the decision: " This case, here on certiorari to the Court of Appeals of New York, presents an important question under the Full Faith and Credit Clause of the Constitution. Article IV, § 1. It is whether a New York decree awarding respondent $180 per month for her maintenance and support in a separation proceeding survived a Nevada divorce decree which subsequently was granted petitioner." (P. 542.)

Moreover, after enumerating particulars of the ways in which the " marital status involves the regularity and integrity of the marriage relation " (p. 546) and then going on to state (p. 547): " Those are the considerations that have long permitted the State of the matrimonial domicile to change the marital status of the parties by an *ex parte* divorce proceeding ", the opinion continues (pp. 547–549): " But the question is whether Nevada could under any circumstances adjudicate rights of respondent under the New York judgment when she was not personally served or did not appear in the proceeding. *Bassett* v. *Bassett,* 141 F. 2d 954, held that Nevada could not. We agree with that view. The New York judgment is a property interest of respondent, created by New York in a proceeding in which both parties were present. It imposed obligations on petitioner and granted rights to respondent. The property interest which it created was an intangible, jurisdiction over which cannot be exerted through control over a physical thing. * * * The Nevada decree that is said to wipe out respondent's claim for alimony under the New York judgment is nothing less than an attempt by Nevada to restrain respondent from asserting her claim under that judgment. This is an attempt to exercise *in personam* jurisdiction over a person not before the court. That may not be done. Since Nevada had no power to adjudicate respondent's rights in the New York judgment, New York need not give full faith and credit to that phase of Nevada's judgment. * * * The result in this situation is to make the divorce divisible — to give effect to the Nevada decree insofar as it affects marital status and to make it ineffective on the issue of alimony. It accommodates the interest of both Nevada

and New York in this broken marriage by restricting each State to matters of her dominant concern."

*Estin* v. *Estin* (*supra*) would have been apposite to the *Gittelman* v. *Gittelman* proceeding (*supra*) *only* if Mrs. Gittelman had previously procured a New York State Supreme Court judgment of separation awarding to her alimony which was not being paid; in which event, her Family Court petition might have come under subdivision 2 of section 137 of the Domestic Relations Court Act of the City of New York, and that would have raised the question whether, assuming respondent's ex parte Florida divorce to have been predicated on a bona fide domicile, the *Estin* v. *Estin* ruling that such kind of sister-State judgment cannot divest property rights granted to the wife in the matrimonial domicile State, would have authorized a Family Court order in the face of the language of subdivision 1 of section 137 of the Domestic Relations Court Act of the City of New York and the restricting provisions of section 18 of article VI of the New York State Constitution.

Analogous reasoning underlies my dissent also from Justice STITT's above-quoted determination in *Franklin* v. *Franklin* (189 Misc. 422, *supra*) that *Esenwein* v. *Commonwealth* (325 U. S. 279, *supra*) is authority for the entry of a Family Court support order in behalf of a petitioner wife irrespective of the efficacy of an ex parte sister-State divorce decree to terminate the marriage relationship.

True, in a concurring opinion Justice RUTLEDGE stated that " the jurisdictional foundation for a decree in one state capable of foreclosing an action for maintenance or support in another MAY be different from that required to alter marital status with extraterritorial effect " (*Esenwein* v. *Commonwealth, supra,* p. 283; emphasis supplied); and Justice DOUGLAS also wrote: " I think it is important to keep in mind a basic difference between the problem of marital capacity and the problem of support.  *  *  *  Quite different considerations would have been presented if North Carolina had merely sought to compel the husband to support his deserted wife and children, whether the Nevada decree had made no provision for the support of the former wife and children or had provided an amount deemed insufficient by North Carolina. In other words, *it is not apparent* that the spouse who obtained a decree can defeat an action for maintenance or support in another State by showing that he was domiciled in the State which awarded him the divorce decree." (Pp. 281–282; emphasis supplied.)

However, both those statements were obiter dicta to the only point actually decided, namely, that, although the Nevada divorce decree was presumptively binding, the Pennsylvania Courts "were warranted in finding that the respondent sustained the burden of impeaching the foundation of the Nevada decree on the jurisdictional prerequisite of *bona fide* domicile. The Pennsylvania Supreme Court rightly indicated that if merely the Nevada decree had been in evidence, it was entitled to carry the day. But the [Pennsylvania] Supreme Court found that on the entire showing there was convincing countervailing evidence to disprove petitioner's intention to establish a domicile in Nevada. The Pennsylvania courts have viewed their Constitutional duty correctly. It is not for us to retry the facts, and we cannot say that in reaching their conclusion the Pennsylvania courts did not have warrant in evidence and did not fairly weigh the facts." (Quoted from Justice Frankfurter's *Esenwein* v. *Commonwealth* opinion, p. 281, from which there was no dissent, although Justices Rutledge and Douglas wrote concurring opinions.)

Besides, the *actual* holding in *Esenwein* v. *Commonwealth* (*supra*) does not touch the distinct and additional point that, assuming the sister State ex parte divorce decree to have been predicated upon a bona fide domicile and therefore entitled to full faith and credit insofar as concerns the marital status, a Family Court order in favor of a woman whose marital status as wife has been thereby terminated would be void as violative of section 18 of article VI of the New York State Constitution, as well as the unequivocal language of subdivision 1 of section 137 of the Domestic Relations Court Act of the City of New York.

Doubtless it would be consonant with the full faith and credit clause and within the New York State constitutional power of the Legislature to have enacted the bill, introduced and killed at the 1948 session (Sen. Int. No. 2366, Print No. 2611), which would have added to the Civil Practice Act a new section to provide that "when the last joint matrimonial domicile was within the State of New York and the husband acquires domicile or residence outside of the State and obtains a valid separation or divorce decree and the wife neither appeared nor was served in jurisdiction thereof, the wife shall have a cause of action for support and for education and maintenance of the children of the marriage." Insofar as children are concerned, neither subdivision 1 of section 137 of the Domestic Relations Court Act of the City of New York nor section 18 of article VI of the New

York State Constitution precludes a Family Court support order; and it is the common practice to make an order for a child of divorced parents regardless of the validity or invalidity of the divorce. But provision for support of a divorced wife is solely the function of the Supreme Court and not within the jurisdiction of the Family Court (as restricted by N. Y. Const., art. VI, § 18).

Significantly, in the opinion ordering a new trial the New York Court of Appeals in *Matter of Franklin* v. *Franklin* (295 N. Y. 431 *supra*) had commented, at page 435:

" Whether the respondent is bound to support the petitioner irrespective of the validity of his Illinois decree is a question that is not here presented (cf. *Esenwein* v. *Commonwealth,* 325 U. S. 279, 282–283). On a further hearing, however, that question may be raised against him, and in that event, consideration should be given to the following provision of the Domestic Relations Court Act of the City of New York: ' If the marriage relationship shall have been terminated by final decree of the supreme court of the state of New York or by judgment of any other court of competent jurisdiction, when valid in the state of New York, a petition may be filed or an order for support made or enforced in the Family Court only for the benefit of a child of such marriage.' (§ 137, subd. 1.) "

Throughout the above analysis it must be borne in mind that the Legislature can confer on the Domestic Relations Court of the City of New York as a court of enumerated powers jurisdiction only within the frame of the constitutional grant, namely: " The legislature may establish children's courts, and courts of domestic relations, as separate courts, or as parts of existing courts or courts hereafter to be created, and may confer upon them such jurisdiction as may be necessary * * * and to compel the support of a *wife,* child, or poor relative by persons legally chargeable therewith who abandon or neglect to support any of them ". (N. Y. Const., art. VI, § 18; emphasis supplied.)

That is, the Family Court has not been, and could not be, clothed with the power to order alimony, or any other form of support, for " an *ex-wife* "; and section 91 of the Domestic Relations Court Act of the City of New York therefore provides: " § 91. *Jurisdiction* The family court shall have (1) Jurisdiction within the city to hear and determine all proceedings to compel the support of a *wife,* child or poor relative;" (emphasis supplied).

Similarly limited is the corresponding provision of the Children's Court Act, namely: " § 30. *Jurisdiction* * * *

1. Jurisdiction within the county to hear and determine all proceedings to compel the support of a minor child, step-child; *wife, if pregnant, or if the support of her minor child or step-child is involved;* or minor poor relative ". (Emphasis supplied.)

True, the matrimonial jurisdiction of the Supreme Court of the State of New York is also wholly statutory, and it is in certain respects concurrent with the Family Court's and Children's Court's jurisdiction to order support. But the Supreme Court, unlike the Family Court or the Children's Court, is a Court of general jurisdiction; and the power to award *alimony* to *an ex-wife* conferred upon it by section 1155 of the Civil Practice Act is within the Legislature's authority to grant. But the Legislature cannot grant, and has not granted, that power to the Family Court or any Children's Court because the constitutional authorization permits clothing those inferior courts only with jurisdiction to " compel the support of a *wife,* child or poor relative " but not also to determine the amount or collect any maintenance for an ex-wife, i.e. *alimony* for a former *wife.*

The first sentence of section 137 of the Domestic Relations Court Act of the City of New York before the May 11, 1942, amendment (L. 1942, ch. 762) which enacted the present subdivision 1, had read:

" § 137. *Divorces; separations, annulments, et cetera.* Where a *divorce,* separation or annulment *has been granted to the petitioner by the supreme court* or a suit for such relief is pending, and the respondent has been required under the terms of any order or decree entered in such separation, divorce or annulment proceeding to pay a specified sum to the petitioner or her children as alimony or maintenance and has failed to do so, that fact shall not be a bar to a proceeding in the family court to compel support within the limits of the order of the supreme court and as set forth by section ninety-two of this act, provided that the respondent is not in jail for failure to obey the order of the supreme court ". (Emphasis supplied.)

The sentence just quoted, particularly the words " where a divorce, separation or annulment *has been granted* to the petitioner " left open to doubt whether an order could be made or continued for support of a former wife who had procured a final judgment of divorce or annulment and an award therein of alimony which was not being paid; indeed, I recall cases in which the petitioner asserted violation of an order of that kind made by a previous Justice, thereby raising the question whether

such order was not void *ab initio* for lack of subject-matter jurisdiction because of the constitutional limitation in section 18 of article VI of the New York State Constitution.

That confusion was the subject of an October 27, 1938, opinion of Justice PANKEN (*Kastner* v. *Kastner,* 169 Misc. 259), in which he held that it was not the intention of the Legislature in its enactment of section 137 of the Domestic Relations Court Act of the City of New York, in its then form, to empower the Family Court to take jurisdiction over spouses whose marital relationship had been terminated.

So, to resolve any possible doubt by providing expressly that there could be no Family Court order for an *ex-wife,* the above-quoted present subdivision 1 of section 137 of the Domestic Relations Court Act of the City of New York was enacted by chapter 762 of the Laws of 1942.

As the author of such new subdivision 1 of section 137 of the Domestic Relations Court Act of the City of New York I know that its sole purpose was to end any confusion from the co-mingling, in one sentence, of provision for the Family Court's taking jurisdiction upon violation of a *pendente lite* support order made in a divorce, annulment, or separation action or of a support direction contained in a final judgment of *separation* and barring jurisdiction after breach of a final judgment of *divorce* or *annulment.*

In *Adler* v. *Adler* (192 Misc. 953) Justice PANKEN reached, and persuasively expounded, the like conclusion that neither *Estin* v. *Estin* (*supra*) nor *Esenwein* v. *Commonwealth* (*supra*) effectuates conferring or preserving Family Court jurisdiction to order support for a petitioner whose former husband had been granted a Nevada constructive-service divorce decree predicated on his bona fide domicile there.

Having concluded that further proceedings in the Family Court are not barred it remains only to determine whether the December 3, 1947, order should be continued unmodified and to fix the amount and method of payment of arrears accrued to date.

Respondent's present income is substantially the same as the assumed basis of that order. But there is now a material change of circumstances, namely, that such order stressed petitioner's then illness whereas the May 17, 1950, physical examination report of the director of this court's physiological laboratory states: " There is no organic disease present to prevent this woman from performing any type of work ".

Since this was a short duration marriage of a young couple still in the early thirties, their union has been childless, and respondent is a man of presently moderate earning capacity, there is pertinent this comment made concerning another childless young wife: " For her self-respect and peace of mind and as therapy for her nervousness, petitioner should resume gainful occupation and shun ' alimony mindedness '. This court has had frequent occasion to observe the deteriorating effects of ' alimony-mindedness ' on a childless wife who aggravates the misery of the marriage failure by over-absorption in her disappointment and concentration on vindictive efforts to exact from the estranged husband support which she might otherwise herself earn in a fuller and emotionally more self-satisfying measure." ("*Filicaza*" v. "*Filicaza*", 192 Misc. 76, 79–80.)

Accordingly, respondent's cross application to vacate the December 3, 1947, order is denied, but that order is hereby modified to $5 a week, plus $2 a week on arrears of $620, beginning with a first payment on June 20, 1950.

It is hoped that this disposition may stimulate petitioner, on the one hand, to find gainful employment; and respondent, on the other hand, to institute a Supreme Court declaratory judgment action.

When and if petitioner would otherwise become dependent upon home relief, today's order may be increased, by the Justice then sitting, to exonerate the department of welfare of the city of New York from the burden of petitioner's support to an extent fully commensurate with respondent's income and his own needs.

Notice shall be given to the parties pursuant to the subjoined direction.