" AMELIA MESSINA ", Petitioner, *v.* " MICHAEL MESSINA ", Respondent.*

Domestic Relations Court of the City of New York, Family Court, New York County, November 17, 1950.

*John P. McGrath, Corporation Counsel (Mathilda Miller* of counsel), for petitioner.

*Louis B. Frutkin* for respondent.

SICHER, J. There are presented aspects of the relations between the summary support jurisdiction of this court and the matrimonial actions jurisdiction of the Supreme Court of the State of New York.

The parties were the principals in an April 19, 1942, duly performed marriage ceremony.

Their union has been childless. Indeed, on December 28, 1945, petitioner commenced in the Supreme Court, New York County, an action for annulment on the ground of alleged fraudulent concealment of respondent's intention never to procreate children.

Respondent interposed an answer and the action remained dormant until entry of a May 13, 1950, order permitting withdrawal of that answer and referring the matter to an Official Referee pursuant to the customary practice.

On the Referee's report that the wife was entitled to a judgment annulling the marriage for fraud, an interlocutory judg-

---

* The opinion as filed sets forth the true names of all parties but as here published substitutes fictitious names and disguises certain other details, in consonance with the spirit of section 52 of the Domestic Relations Court Act of the City of New York (L. 1933, ch. 482, as amd.).

ment to that effect was entered ·on July 25, 1950. And that judgment has duly become final as of course.

Such final judgment contains no direction for the wife's support (under Civ. Prac. Act, § 1140-a) nor was there any *pendente lite* order for alimony or counsel fees (under Civ. Prac. Act, § 1169).

Meanwhile, on June 1, 1949, petitioner had procured from this Family Court a consent order in the nominal sum of $5 a week, entered merely after colloquy with counsel. The Justice who entered that order indicated such consent but not its basis nor other particulars as contemplated by subdivision (d) of rule XIII of the Rules of Practice of the Domestic Relations Court of the City of New York, Family Court Division (Bender's Court Rules [1st ed.], p. 368). Thus, it does not appear whether there was considered the election of forums principle that a wife who has first instituted in the Supreme Court an action for divorce, separation, or annulment may not thereafter, during the pendency of such action, also invoke the jurisdiction of the Family Court except on a showing that the community would otherwise be burdened with her support (see *Matter of Costa* v. *Costa,* 247 App. Div. 192, 193; " *Filicaza* " v. " *Filicaza* ", 192 Misc. 76).

Moreover, " in accordance with the rule that the existence of the relation of husband and wife is the foundation of the right to alimony pendente lite, the great weight of authority is to the effect that in the absence of express statutory authorization, no allowance can be made to a woman who brings a suit to annul her marriage, because the bringing of an annulment suit necessarily involves a denial of the existence of the marital relation and is therefore inconsistent with the assertion of any marital rights." (17 Am. Jur., Annulment Suits, § 556, p. 443. Accord, *Jones* v. *Brinsmade,* 183 N. Y. 258.)

Nevertheless, respondent fully performed that June 1, 1949, Family Court order until August 8, 1950, when he ceased payment under advice of counsel after entry of the aforesaid July 25, 1950, interlocutory judgment of annulment.

Because that judgment has since become final it is unnecessary to decide the status of the Family Court order as at July 25, 1950. For, " a marriage procured by fraud is voidable, not void. Even so, annulment when decreed, puts an end to it from the beginning (*Matter of Moncrief,* 235 N. Y. 390; *American Surety Co.* v. *Conner,* 251 N. Y. 1). It is not dissolved as upon divorce. It is effaced as if it had never been." (*Sleicher* v. *Sleicher,* 251 N. Y. 366, 369.)

Obviously distinguishable is the effect of an interlocutory judgment of divorce, since such a judgment does not dissolve the marriage relation between the parties but contemplates a final judgment to accomplish that result and the termination begins only upon entry of the final judgment and not retroactively. (See *Matter of Crandall*, 196 N. Y. 127, and *Pettit* v. *Pettit*, 105 App. Div. 312.)

As a corollary to the principle enunciated in *Sleicher* v. *Sleicher* (*supra*) it has been held that a wife is not entitled to a judgment for arrears under a temporary alimony order unpaid at the date of entry of a judgment of annulment in the husband's favor (*Saunders* v. *Saunders*, 63 N. Y. S. 2d 880); " the judgment of annulment granted herein reverts back to the very inception of the marriage and renders the marriage contract and its incidental obligations void from the beginning. The annulment destroys the marriage from the beginning as a source of rights and duties." (*Saunders* v. *Saunders, supra*, p. 882 [COYNE, J.].) " The principle * * * is that if the wife succeed, the decree nullifying the marriage relates back to the contract of marriage and the parties in that event are in the same position as if they never had been married; in other words, that the wife having elected to rescind the contract, can claim nothing under it." (*Farnham* v. *Farnham*, 227 N. Y. 155, 159, and cases cited.) Analogously, today's arrears under the June 1, 1949, Family Court order, all accrued since the entry of the July 25, 1950, interlocutory judgment of annulment which has now become final, are hereby cancelled, both as a matter of law and in the exercise of the discretionary power conferred by subdivision (10) of section 92 of the Domestic Relations Court Act of the City of New York.

For the foregoing reasons the June 1, 1949, order is hereby vacated and the proceeding marked " Reserved Generally ", pursuant to paragraph (2) of subdivision (a) and subdivision (c) of rule XXIV of the Rules of Practice of the Domestic Relations Court of the City of New York, Family Court Division (Bender's Court Rules [1st ed.], p. 371), together with the further express direction that all book arrears are hereby cancelled.

In conclusion, it may not be inappropriate to add that the foregoing reasoning is applicable only when the wife has sought the annulment. Quite different considerations would operate when the husband will have started an action for annulment after the wife will have procured a Family Court order of

support still in force. As previously commented: " If respondent institute an action for separation, divorce or annulment while in default under a support order of this court, *Matter of Costa* v. *Costa* (*supra*) seems to me not to oust this court of jurisdiction in respect of any arrears under such order nor automatically to cease its operation prospectively, even though petitioner might not be likely to become a public charge. Otherwise, the mere service of a summons and complaint in such action would be a facile device for flouting the order of this court. However, if petitioner, not content to rely upon the previously procured Family Court order, moves for a *pendente lite* order for alimony or maintenance in such Supreme Court action, the support order of this court would cease to operate prospectively as at the date of the entry of such *pendente lite* order ". (" *Varney* " v. " *Varney* ", 178 Misc. 165, 172. Cf. " *Santora* " v. " *Santora* ", 199 Misc. 335.)

Notice shall be given pursuant to the subjoined direction.