"HANNAH C. McCARTHY", Petitioner, *v.* "PATRICK McCARTHY", Respondent.*

Domestic Relations Court of the City of New York, Family Court, Bronx County, March 22, 1951.

---

* The opinion as filed sets forth the true names of all parties but as here published substitutes fictitious names and disguises certain other details, in consonance with the spirit of section 52 of the Domestic Relations Court Act of the City of New York (L. 1933, ch. 482, as amd. by L. 1942, ch. 761).

*James F. Reynolds* for petitioner.

*Gilbert K. Gottlieb* for respondent.

SICHER, J. Decision has been reserved pending the efforts of counsel to consummate a separation agreement as the only realistic way to ameliorate the intolerable existing relations of the parties. The court regrets that those efforts have failed; for, today's decision, which is constrained by the present record, may serve only to aggravate the corroding stalemate between two unhappy, stubborn, money-concerned spouses bitterly bent on nettling each other.

The parties intermarried on June 29, 1941, in a Roman Catholic Church, and became the parents of one child (" Mary ") born January 27, 1944. They had already reached middle age before marrying and apparently were unable to make a satisfactory readjustment of prior fixed habits.

Marital intercourse had already ceased before December 1, 1949, when the wife first invoked the facilities of this court. At that time probation bureau intake conferences eventuated in an out-of-court agreement that the parties would remain together in the Bronx apartment which they still occupy, that of the husband-father's then net weekly earnings of $65 he would turn over to the wife-mother $55 each week, out of which she would defray the rent and all other household and living expenses, avail herself of the H.I.P. medical benefits arranged for by the husband-father, and provide adequate meals. It was also suggested that they seek the guidance of their parish priest.

On March 23, 1950, the wife-mother came to this court's probation bureau to complain that during the week immediately preceding the husband-father deducted from his stipulated $55 a week contribution $31.67, instead of only $10 for items which, she asserted, he should have taken care of out of his stipulated $10 a week share of his wages; the chronological record entry also indicates, she then stated that there was no common ground between her and the husband-father and that she would have left long ago except for a lack of place to live; and a further conference was scheduled for April 10, 1950, pending a possible new accord between the parties themselves.

On April 10, 1950, the husband-father alone attended, stating, according to the chronological record entry, that conditions had improved since the December, 1949, conference except for the one controversy described in the paragraph immediately preceding.

In any event nothing further was heard from either party until the wife returned to this court on January 4, 1951, the home situation having meanwhile further deteriorated following " Mary's " death in December, 1950.

When efforts for conciliation failed, including a proposed plan for the wife to return to X Town, Massachusetts, upon the husband's agreement to contribute $15 a week toward her support, on January 10, 1951, a formal petition was filed, a probation bureau investigation and a physical examination of respondent ordered by me, and a further hearing scheduled for February 2, 1951, on which last-mentioned date both parties presented all such evidence as then available.

The law governing judicial separations in this State is rigid and does not fully take into account latter-day medical and sociological concepts. So, the following authoritative pronouncement of the New York Court of Appeals is a mandate still binding upon all judges in the State of New York charged with the duty of granting or denying a judgment of separation from bed and board and fixing or denying alimony: " Incompatibility of temper is no ground for separation in New York. The misery arising out of domestic quarrels does not justify a termination of the legal rights and duties of husband and wife. *For such ills the patients must minister unto themselves; our courts of justice offer no cure."* (*Pearson* v. *Pearson,* 230 N. Y. 141, 148; emphasis supplied.)

Moreover, as recently as December 12, 1950, the Appellate Division, First Department, rendered a *Per Curiam* opinion, *Berman* v. *Berman* (277 App. Div. 560, PECK, P. J., DORE, COHN and CALLAHAN, JJ., concurring; VAN VOORHIS, J., dissenting) to the effect that a judgment of separation on the ground of cruel and inhuman treatment and conduct on the part of the husband rendering it unsafe and improper for the wife to live with him is contrary to the policy of the law in this State if the wife continued to reside in the same apartment as the husband during the time of his alleged misconduct and since the trial. However, VAN VOORHIS, J., filed a dissenting opinion (pp. 561–562) which argues persuasively that " it appears to be erroneous to establish a rule of law that a judgment of separation can never be granted if the parties are living under the same roof. It is difficult, even for persons of independent means, to find housing accommodations in New York City at the present time. It is impossible for a middle aged married woman without near relatives, funds or employment, if her husband is intransigent, to leave his abode and find support and maintenance except with

the gravest difficulty. \* \* \* It is especially difficult to justify a condition precedent that estranged couples must be under separate roofs in a State where continued refusal of sexual intercourse, without excuse, is held to be by itself a sufficient ground for a separation decree (*Mirizio* v. *Mirizio,* 242 N. Y. 74)."

Doubtless because of the foregoing decisions petitioner's counsel states in his brief: " neither the Petitioner nor the Respondent will agree to separate from each other, and there not being sufficient grounds to institute an action for separation the Petitioner remains at the mercy of the Respondent and appeals to this Court that the Respondent be compelled to pay to her a certain amount per week for food, clothing and personal needs."

Somewhat different considerations govern a summary support proceeding in this court, which has no power to grant a judgment of separation but only an order for support and which features a socialized procedure permitting realistic awareness that often in marital stress the parties are *emotionally unable* to " minister unto themselves " but sometimes *can* be helped by skilled social case-work treatment. But in this instance the case-work efforts of the probation bureau, initially and for a while successful, are no longer acceptable to the parties. And, though this Family Court constantly strives for a sympathetic and constructive approach to broken home problems, failure to support on a scale commensurate both with petitioner's rights and respondent's capacity is the sole basis of its *ad invitem* jurisdiction, so that an order for support may be entered only upon the duly acknowledged written agreement of the parties (N.Y. City Dom. Rel. Ct. Act, § 118) or their consent noted on the record or by written stipulation of attorneys or after a formal hearing of the allegations of a duly verified petition and of sworn proofs in conformity with the rules of evidence (see *Anonymous* v. *Anonymous,* 24 N. Y. S. 2d 613).

The petition in this proceeding was filed so precipitantly that the evidence is quite insufficient to sustain the jurisdictional allegation therein that " Respondent, on or about December 13th, 1950, and subsequent thereto, refused and neglected to provide fair and reasonable support for Petitioner according to his means and earning capacity ".

Of course, the assertions of alleged acts of cruelty and non-support in the brief of petitioner's counsel which were not shown by evidence at the February 6, 1951, hearing cannot be considered.

Family Court Rule XXXI provides:

" (a) A petition may be dismissed if: * * *

" (2) Its essential allegations are not established by a fair preponderance of credible and competent evidence after a hearing; * * *

" (d) Dismissal not on the merits shall be stated to be without prejudice to renewal if the grounds of dismissal and the attendant circumstances so indicate." (Bender's Court Rules [1st ed.], pp. 372–373.)

For the foregoing reasons the petition must be, and it hereby is, dismissed for failure of proof, but with leave to file a new petition when and if the necessary jurisdictional facts will have occurred after January 10, 1951 (the date of the petition in the instant proceeding). (See *Anonymous* v. *Anonymous,* 173 Misc. 244; *Matter of Wignall* v. *Wignall,* 163 Misc. 910.)

Such dismissal is, of course, also without prejudice to the right of either party to institute a plenary matrimonial action in the Supreme Court (see *Loomis* v. *Loomis,* 288 N. Y. 222, 225).

Today's decision is rendered reluctantly and with a sense of frustration, because it does not solve the acute problem of the parties; and if it encourages respondent's intransigence it may in the long run prove a costly " victory ". For, his insistence on making all purchases of food and other necessaries and refusal to entrust his wife with any moneys is not unlikely to develop sooner or later a cause of action for separation on the ground of failure to support or cruelty, and a consequent burden of counsel fees.

Both parties profess devotion to a religion that prescribes for its followers that " the valid marriage of Christians, consummated by the conjugal act, cannot be dissolved by any human authority for any reason; death alone can dissolve the bond" (Woywood, A Practical Commentary on the Code of the Canon Law, p. 64); and a poet has autobiographically written: " Where love once was, let there be no hate". Would that such devotion and the memory of their deceased child soften the hostility of these now embattled spouses, if not for a reconciliation, at least into a voluntary separation and an agreement on a compromise figure somewhere between respondent's alleged offer of $10 a week (which is unreasonably low) and petitioner's alleged demand of $25 (which is excessive).

Finally, there is quoted as nearly apposite the following comment from an earlier opinion:

" Besides, for her self-respect and peace of mind and as therapy for her nervousness, petitioner should resume gainful

occupation and shun ' alimony-mindedness '.  *  *  *  On the other hand, respondent may be not only callously ungenerous but also pursuing a penny-wise, pound-foolish policy in rigidly standing on technical defenses at this juncture. The decent, and long-term prudent, course for respondent might be voluntarily to help tide petitioner over a brief period of readjustment to the collapse of the annulment scheme and relieve her from the tensions of the drain on her dwindling savings while pulling herself together." (" *Filicaza* " v. " *Filicaza* ", 192 Misc. 76, 79–80.)

Notice shall be given pursuant to the subjoined direction.