IRENE E. MEENAN, Petitioner, *v.* JOHN E. MEENAN, Respondent.

Domestic Relations Court of the City. of New York, Family Court, Bronx County, November 3, 1954.

*Frederick G. Britton* for petitioner.

*Irwin Pakula* for respondent.

DELANY, J.   Respondent applies to vacate an order of this court dated September 24, 1952, requiring him to support petitioner, on the ground that the marriage relationship between the parties herein was duly terminated, within the meaning and scope of subdivision 1 of section 137 of the Domestic Relations Court Act of the City of New York, by a final decree of divorce entered in favor of respondent and against petitioner on January 6, 1953, in the State of Nevada.

The record is comprised of (1) the original petition herein and indorsements thereon; (2) a certified copy of a January 6, 1953, constructive-service default decree of divorce granted to respondent by the Eighth Judicial District Court of the State of Nevada, Clark County, upon service of the summons on petitioner in New York City, but not in Nevada, and without her appearance by attorney there, but based on respondent's bona fide Nevada domicile; and (3) a stipulation dated June 17, 1954, by and between the attorneys for the parties on the current application, to the effect that " the following facts are conceded and may be used as the record of the hearing held on June 14th, 1954 before Mr. Justice DELANY of the Domestic Relations Court of the City of New York, Bronx County, and may be used in the case on appeal herein in place of the record of said trial."

Thus, there are presented no controverted issues of fact but only questions of law.   Those, however, unfortunately, are of a kind which illustrates the possibility of unjust consequences from the overruling of *Haddock* v. *Haddock* (201 U. S. 562) by *Williams* v. *North Carolina* (317 .U. S. 287; 325 U. S. 226) and also high lights the need in New York City for the creation of a single, integrated, properly implemented court of general juris-

diction over *all* justiciable issues affecting the family and children in lieu of the existing multiplicity of courts of fractionalized jurisdictions.

By the terms of such stipulation it is conceded that:

(1) Petitioner and respondent have lived separate and apart since before June 15, 1951.

(2) On June 15, 1951, Justice Polier duly entered an order of this court directing the payment, by respondent, of $75 semi-monthly toward the support of petitioner as his then wife '' entitled to support on means basis for self '' and also toward the support of the parties' child Gertrude.

(3) On September 24, 1952, on respondent's application and proof that he was no longer chargeable in this court with the support of said child Gertrude, that June 15, 1951, order was duly modified to provide support, in the sum of $100 per month, beginning October 1, 1952, for the petitioner only '' on a means basis ''.

Such original and modifying orders were entered on the personal appearance of both parties before this court, which had full jurisdiction of them and of the subject matter of the support proceedings in this court.

(4) The parties intermarried on October 4, 1930; petitioner was then, and continuously since has remained, a resident of the city and State of New York, Bronx County.

Respondent was likewise a resident of the city of New York from at least October 4, 1930, to and including September 27, 1952.

(5) On September 27, 1952, respondent left New York City and went to Las Vegas, Nevada.

'' That he has continuously resided in the City of Las Vegas, Nevada, since October 2nd, 1952 and that *the domicile of the respondent since October 2nd, 1952 has been Las Vegas, Nevada.*'' (Item 5 of said stipulation; emphasis supplied.)

(6) On November 17, 1952, respondent filed a petition in the Eighth Judicial District Court of the State of Nevada, Clark County, for an absolute divorce against the petitioner herein, on the sole ground '' that since said marriage, defendant has treated plaintiff with extreme cruelty, mental in character, without cause therefor ''.

The summons and complaint in that action were served on the petitioner herein in New York City on November 26, 1952. A final decree of divorce was granted to respondent against petitioner on January 6, 1953, by the Nevada Court.

(7) Petitioner did not appear in the Nevada action, and that decree was granted on her default, after constructive service of

the summons outside of Nevada under an order of publication, on the ground of extreme cruelty, mental in character.

(8) Since October 1, 1952, respondent has complied with said September 24, 1952, order of this court and made the $100 per month payments thereunder up to or about June 4, 1954.

(9) Rule 45 of the Rules of the District Court of Nevada provides in substance a six months' Statute of Limitations for amendment, modification or correction of any judgment, order or other judicial act or proceeding in that State.

(10) Said certified copy of such January 6, 1953, Nevada decree of divorce shall constitute an exhibit on the instant application (i.e. exemplification is waived).

The Nevada decree of divorce is in any event at least presumptive evidence of the jurisdictional facts entitling it to full faith and credit in this court (*Matter of Homes*, 291 N. Y. 261, 273; *Matter of Franklin* v. *Franklin*, 295 N. Y. 431; *Maloney* v. *Maloney*, 51 N. Y. S. 2d 4; *Esenwein* v. *Commonwealth*, 325 U. S. 279). But that presumption would have been rebuttable " within the right, preserved by *Williams* v. *North Carolina* (317 U. S. 287; 325 U. S. 226) of the original domiciliary State to make its independent determination of the *bona fides* of the alleged new domicile and to refuse to recognize a default decree procured by a spouse who, the original domiciliary forum determines, contrary to the finding of the granting State forum, had in truth not acquired a genuine new domicile.'' (" *Morton* " v. " *Morton* ", 199 Misc. 547, 549.) If there had been adduced sufficient countervailing evidence, such as respondent's early departure from Nevada after entry of the decree and return to New York City, the said January 6, 1953, Nevada decree of divorce might have been held not to constitute such a " judgment of any other court of competent jurisdiction * * * valid in the state of New York " within the meaning and scope of subdivision 1 of section 137 of the Domestic Relations Court Act of the City of New York so as to bar the continued award of support to petitioner (see " *Kurski* " v. " *Kurski* ", 185 Misc. 97, and " *Morton* " v. " *Morton* ", 199 Misc. 547, *supra*). No such evidence was adduced. On the contrary, it is stipulated that respondent has been domiciled in Nevada continuously since October 2, 1952. Petitioner's attorney's brief frankly states: "Respondent was at all times a resident of the State of New York until September 27, 1952. On that date he left for Las Vegas, Nevada, and has resided in that City since that date. In view of petitioner's inability to disprove his claim to a bona fide residence for the purpose of this hearing, it is conceded (see

concession dated June 17, 1954) that the respondent is domiciled in the State of Nevada.''

Such stipulation and concession, it seems to me, bring the instant case squarely within the dictum of '' Morton '' v. '' Morton '' (supra, p. 552), reading: '' However, in any event, nothing in the preceding discussion should be construed as an intimation that if the March 31, 1949, Nevada decree had been deemed effective to terminate the relationship of husband and wife it might still not serve to bar the Family Court from continuing to order support for petitioner as an ex-wife. Rather, if that decree had been found to be based on a bona fide domicile, I should have unhesitatingly applied subdivision 1 of section 137 of the Domestic Relations Court Act of the City of New York (see, for example, ' Standish ' v. ' Standish ', 179 Misc. 564, supra).''

The language just quoted is dictum only, and the precise question has not been squarely determined in any discovered decision in this court (although, inferentially, in '' Standish '' v. '' Standish '', 179 Misc. 564, and Adler v. Adler, 192 Misc. 953), and there has not been cited nor discovered any pertinent appellate court decision. But the above-quoted dictum in '' Morton '' v. '' Morton '' is based on such a full discussion of the history and intent of subdivision 1 of section 137 of the Domestic Relations Court Act of the City of New York, the limitations imposed on the Domestic Relations Court by section 18 of article VI of the New York State Constitution and elaborate analysis of Estin v. Estin (334 U. S. 541), Esenwein v. Commonwealth (325 U. S. 279, supra), Matter of Franklin v. Franklin (295 N. Y. 431, supra), Gittelman v. Gittelman (192 Misc. 334), and Franklin v. Franklin (189 Misc. 442) as to persuade me that Mr. Justice Sicher's dictum correctly interprets subdivision 1 of section 137 of the Domestic Relations Court Act of the City of New York and its controlling effect on the instant application. The reasoning of Mr. Justice Sicher's dictum in that case is therefore concurred in and adopted with the same force and effect as if expressly reiterated in this opinion.

The foregoing conclusion is not overcome by the earnest arguments in petitioner's counsel's brief to the effect that (1) the Nevada decree is not entitled to any recognition in New York because it was '' obtained by fraud '' inasmuch as its asserted ground of extreme mental cruelty on the part of petitioner conflicts with Justice Polier's findings in the prior orders of this court that she was entitled to support on a means basis; and (2) the divisible divorce concept enunciated in Estin v. Estin

(whereby the Nevada judgment was effectual also in New York insofar as it terminated the marital relationship but that for lack of in personam jurisdiction it was ineffectual to cancel the alimony provision of a prior New York judgment of separation) applies equally to prior summary procedure support orders of the Domestic Relations Court of the City of New York.

The first of those arguments disregards the controlling ruling in *Lynn* v. *Lynn* (302 N. Y. 193), in which Judge FULD's opinion, unanimously concurred in, states (p. 201): '' And even if we were to accept the view of the Appellate Division that the Nevada court, in decreeing the divorce, failed to give appropriate effect to the adjudication made in the New York action, the courts of this state would still be required to accord full faith and credit to the Nevada decree. Nevada's asserted denial of full faith does not justify or permit retaliation by any other state. As the decisions make plain, plaintiff's only remedy to correct the alleged error was by direct appeal from the Nevada judgment through the Nevada courts and, if necessary, to the Supreme Court of the United States '' (citing cases).

Moreover, a support order of this court lacks the dignity of a judgment (*Reisman* v. *Reisman,* 46 N. Y. S. 2d 335), and it is not *res judicata* or binding upon even the Supreme Court of the State of New York in a subsequent matrimonial action between the parties (see *Loomis* v. *Loomis,* 288 N. Y. 222, 224, and *Caldwell* v. *Caldwell,* 298 N. Y. 146).

The second argument is likewise untenable, because it ignores (1) the above-described restricted force of a support order of this court of limited jurisdiction, as compared with a judgment of the Supreme Court of the State of New York, (2) the provision of section 18 of article VI of the New York State Constitution which puts it beyond the power of this court of limited jurisdiction to order support for an ex-wife, and (3) the express provisions of subdivision 1 of section 137 of the Domestic Relations Court Act of the City of New York (which confers, defines, and limits the jurisdiction of this statutory court), namely: '' 1. If the marriage relationship shall have been terminated by final decree of the supreme court of the state of New York or by judgment of any other court of competent jurisdiction, when valid in the state of New York, a petition may be filed or *an order for support made* OR ENFORCED in the family court only for the benefit of a child of such marriage.'' (Emphasis supplied.)

For the foregoing reasons I am constrained to grant respondent's application to vacate said September 24, 1952, order of this court, without prejudice, however, to petitioner's remedy,

if any, in Nevada (see *Lynn* v. *Lynn,* 302 N. Y. 193, 204, *supra*) or in the Supreme Court of the State of New York, especially under section 1170-b of the Civil Practice Act, entitled: " § 1170-b. *Maintenance of wife where divorce or annulment previously granted on non-personal jurisdiction."* This newly enacted addition to the Civil Practice Act is an enlargement of the proposed enactment discussed at pages 557 through 558 of " *Morton* " v. " *Morton* " (199 Misc. 547, *supra*). (See, also, *Vanderbilt* v. *Vanderbilt,* 133 N. Y. S. 2d 314, 317; but see *Methfessel* v. *Methfessel,* 124 N. Y. S. 2d 663.)

By timely application respondent might have procured a vacatur of the September 24, 1952, order of this court as of the date of the entry of the Nevada divorce decree. He continued, however, to pay said order up to the final deposit received June 9, 1954. It does not appear whether this was done to lull petitioner into continued disregard of the Nevada action until the expiration of the six months' limitation period imposed by rule 45 of the Rules of the District Court of Nevada. Nevertheless, on the one hand, petitioner " cannot possibly complain if defendant made payments to her, which he was not obligated to make, either gratuitously or under a mistake of law " (*Lynn* v. *Lynn,* 302 N. Y. 193, 205, *supra*), and, on the other hand, respondent has no right to reclaim any part of the deposits made by him in this court after January 6, 1953, (see N. Y. City Dom. Rel. Ct. Act, § 29, subd. 2, and *Dominico* v. *Dominico,* 57 N. Y. S. 2d 79, 85).

Notify parties and attorneys.