NELL ADLER, Petitioner, *v.* JACK ADLER, Respondent.

Domestic Relations Court of the City of New York, Family Court, New York County, September 13, 1948.

954

*John P. McGrath, Corporation Counsel* (*Walter Gladwin* of counsel), for petitioner.

*Daniel B. Edelman* for respondent.

PANKEN, J. On the facts as testified to in this proceeding, if the petitioner is entitled to support, that support must be fixed, on the basis of her needs, to hold the public harmless and to save her from becoming a public charge.

The petition alleges and it has been testified and proven that petitioner and respondent were married on or about the 16th of October, 1940. The petitioner asks for support from the respondent on the basis that she is his wife. It is axiomatic that incident to a marital relationship a husband is required to maintain, provide for, and support his mate as long as she remains his wife. The respondent resists the petitioner's claim on the ground that the marriage entered upon in October of 1940 has been dissolved by a valid decree issuing out of a court of a sister State.

Section 1 of article IV of the Constitution of the United States provides in part that "Full Faith and Credit shall be given in each State to the public Acts, Records and judicial Proceedings of every other State". Pursuant to the full faith and credit clause of the Constitution of the United States, courts must give faith and credit to the determinations in judicial proceedings of sister States if jurisdiction by such court has been acquired of the subject matter and the parties. A decree dissolving a marriage must be based upon jurisdictional factors. A divorce decree issuing out of a court in a sister State without that court's first having obtained jurisdiction, upon proof that such court has not so obtained jurisdiction, the full faith and credit clause is not to be given effect. Domicile is a necessary fact to confer jurisdiction. Such domicile must be bona fide. A mere sojourn in a sister State for the purpose of obtaining a divorce decree is not such domicile as would require the courts of this State to give full faith and credit to the determination of a court in a sister State.

In *Williams* v. *The State of North Carolina* (325 U. S. 226, 233) the Supreme Court said, "The burden of undermining the verity which the Nevada decrees import rests heavily upon the assailant". In this case there was no direct testimony controverting that of the respondent. In the absence of testimony to disprove the *bona fides* of the domicile of the respondent in the State of Nevada to confer jurisdiction upon the courts of that State to compel the application of the full faith and credit clause, the determination by the Nevada court is binding.

The testimony in this case is conclusive that the respondent had established a bona fide residence within the State of Nevada. He did not remain a resident of that State. However, it is evident from his conduct while he was there residing that it was his full intention to settle in that State. His testimony discloses that he had obtained work. He first made application for a license to drive a cab. He passed all tests but no license was granted him because he had no job to go to. He thereupon obtained employment with a lumber company, and to work in that company's lumberyard he affiliated himself with the Carpenters' International Union.

On the facts I conclude that the divorce decree granted in Nevada to the respondent is valid and so the marital relationship created in October of 1940 between the parties here was severed and came to an end. He is no longer her husband and she no longer is his wife.

The problem here is, can this court continue by its order to require the respondent to provide for and contribute to the support of his ex-wife? I think not. In the case of *Estin* v. *Estin* (296 N. Y. 308) the Court of Appeals affirmed a determination by the Appellate Division (271 App. Div. 829) affirming a decision of Special Term of the Supreme Court of our State (63 N. Y. S. 2d 476). In that case the court said (296 N. Y. 308, 312), " We have then this situation: The full faith and credit clause commands us to accord recognition to so much of the Nevada decree as pronounced the dissolution of the marriage; and the only remaining question is whether the Nevada decree must also be taken to have cancelled the alimony provision made for the wife through the prior judgment in this New York separation action ". In the *Estin* case (*supra*) prior to the institution of the action by the husband in the State of Nevada for an absolute divorce, a judgment was rendered in favor of the wife in a proceeding for a separation, alimony, and counsel fee instituted by her in the Supreme Court of New York State. That judgment was a matter of record at a time the divorce decree was granted to the husband by the court of the State of Nevada. The matter then came on before our Supreme Court on an application by the wife for a judgment for the arrears. The husband had failed to comply with the judgment rendered by the Supreme Court. The effect of the decision in the *Estin* case is that a judgment for alimony granted in the State of New York in favor of a wife survives a divorce decree issued on default in consequence of constructive service by a court of a sister State. An appeal was taken from that determination to the Supreme Court of the United States. It was argued, and on June 7, 1948, that court affirmed the decision of the Court of Appeals of the State of New York. (334 U. S. 541.) Mr. Justice Douglas in his opinion refers to the argument made by the petitioner that the " tail must go with the hide " (p. 544) and that since the marital relationship has been severed and they are no longer husband and wife, all obligations arising out of the marital relationship have ended. Quoting from Justice Douglas' opinion, he said, " The difficulty with that argument is that the highest court in New York has held in this case that a support order can survive divorce and that this one has survived petitioner's divorce. That conclusion is binding on us, except as it conflicts with the Full Faith And Credit Clause ". (p. 544.) And then the court said, " It is not for us to say whether that ruling squares with what the New York court said on earlier

occasions. It is enough that New York today says that such is her policy. The only question for us is whether New York is powerless to make such a ruling in view of the Nevada decree ''. At another point the court in its opinion said (p. 546), '' The fact that the rèquirements of full faith and credit, so far as judgments are concerned, are exacting, if not inexorable * * * does not mean, however, that the State and the domicile of one spouse may, through the use of constructive service, enter a decree that changes every legal incidence of the marriage relationship. Marital status involves the regularity and integrity of the marriage relation ''. '' In this case '', the court said (p. 547), ''New York evinced a concern with this broken marriage when both parties were domiciled in New York before Nevada had any concern with it. New York was rightly concerned lest the abandoned spouse be left impoverished and perhaps become a public charge ''. It would appear that both our Court of Appeals and the Suprème Court of the United States decided that a change in the marital relationship does not affect all legal incidence and responsibilities of the marriage.

Under what circumstances will the legal incidence and responsibilities of the marital relationship survive and continue beyond a dissolution of that marriage by a valid decree issuing out of a court of competent jurisdiction? Assuming that there was no judgment for alimony in a separation suit brought· in the Supreme Court of the State of New York as it occurred in the *Estin* case, or no alimony or counsel fee had been granted in a separation suit pending in the New York Supreme Court, does the decision go far enough to permit a person who had been divorced by a valid decree in a sister State to bring suit in the courts of New York for separation, alimony, and counsel fee or proceed in the separation suit pending to obtain alimony? I think not. The basis for such an action would be the existence of a conventional marital relationship. That relationship having been severed and dissolved by a decree of a court having competent jurisdiction, in my judgment no such action would lie. It would, therefore, seem that the extent to which the decisions in the *Estin* case go, is to preserve the rights of a wife as determined in a judgment rendered her prior to the institution of the suit for an absolute divorce by her husband. Beyond that the courts thus far have not gone.

It is to be noted that in the case of *Esenwein v. Commonwealth* (325 U. S. 279) the Supreme Court held that provision for the support of a wife under the Pennsylvania law did not survive

a divorce decree issuing out of a court of competent jurisdiction in a sister State. Pennsylvania follows a different rule of law than we in our State. The Supreme Court of the United States affirmed the decisions in the *Esenwein* as in the *Estin* case, despite the fact that the rules of law in each State differ radically.

Mr. Justice JACKSON in his dissenting opinion (*Estin* v. *Estin*, p. 553, *supra*) hit the nail squarely on the head when he said that often one does not know when he is married and when married, to whom. Quoting, '' many people who have simply lived in more than one state do not know, and the most learned lawyer cannot advise them with any confidence. The uncertainties that result are not technical '', he said. Unfortunately, that is so. The rights of human beings and their relations towards each other are seriously affected.

This problem cannot be solved as long as each State, forty-eight States, legislates, on the method, manner and basis for divorce without regard to the law of their sister States. The law regulating marriage and divorce should be uniform throughout all the States; indeed, it should be *national*.

The duties of judges generally is to interpret the law as enacted by legislative bodies, to determine differences between parties, and by their judgments give the aggrieved parties the relief warranted. But it seems to me that under certain circumstances it becomes the duty of judges to direct the attention of legislative bodies to lacks in the law; and also to point out, as Mr. Justice JACKSON said, the conditions created under differing laws in the several States which are onerous and hard on folk. Our divorce laws create such a situation.

Under the general welfare clause of the Constitution of the United States, Congress has the power to enact laws affecting the rights of parties in proceedings for absolute divorce setting forth the grounds, the method, and the basis for divorce. The rights of children, the rights of wives, the rights of the community are matters which concern the general welfare of the nation, and fall within the purview of the general welfare clause. Under the general welfare clause money is appropriated for support of scientific research, aid to animal husbandry through the Department of Agriculture, education, roads and highways, health, and other welfare needs. Indeed, it might be said that the Wage and Hour Law is a law redounding to the general welfare of the nation. We have gone far in interpreting the general welfare clause of the Constitution, and that interpretation should

be extended to include the power of passage of uniform divorce laws for the nation.

The Domestic Relations Court of the City of New York is a court of limited jurisdiction. A determination by the Court of Appeals affecting the power of the Supreme Court does not in each instance extend to this court. The Domestic Relations Court of the City of New York cannot contract the powers given it nor can it extend them. It must act within the limitations imposed upon it by the act which created it. The Legislature has in section 91 of the Domestic Relations Court Act, which reads in part, " Jurisdiction within the city to hear and determine all proceedings to compel the support of a wife * * * ", thus limiting the power of this court to make orders for the support of a wife. Nowhere has it even by implication conferred such power and respect to ex-wives. When the relationship of wife and husband no longer exists this court is without power to make provision for the wife; that, though the court had jurisdiction of the parties prior to the institution of an action for an absolute decree of divorce in a sister State by the person chargeable with the support of his dependent. Section 18 of article VI of the New York State Constitution empowered the Legislature to create this court and imposed limitations upon the State Legislature as to the parties and the extent of power to be granted to the court. The Constitution specifically provides as follows, among other things, " and to compel the support of a wife ". That is the extent of power that this court has.

Under the Domestic Relations Court Act the court may make provision for the support of a dependent wife according to the means of a spouse or, on the basis of her need, to hold the community harmless against supporting her. One or the other depends upon who was responsible for the rift in the relationship.

In this proceeding I found as a matter of fact that the petitioner would be entitled to support, if at all, only on the basis of need.

If the rule laid down in the *Estin* case, despite the limitations placed on this court is to be followed, under what circumstances is that to be done? The ex-wife may be dependent today and the next day be wholly self-supporting. A wife entitled to support on the basis of means may have a vested interest but such interest cannot be enforced in the Domestic Relations Court of the City of New York because of its limited powers. I question whether it can be enforced in any other court unless it was

reduced to a judgment prior to the dissolution of the marriage. Where she is entitled to support in order to hold the community harmless it would seem to me that there no longer exists a vested interest for her support from her erstwhile husband.

The problem in this case does not present an isolated situation. Too many cases of this character have arisen and will arise possibly because of a misinterpretation in the determination of *Estin* v. *Estin* (*supra*). It is within the realm of possibility that my interpretation is faulty. I think not.

On all of the facts and the law in the case petition is dismissed.