PATRICIA W. VANDERBILT, Plaintiff, *v.* CORNELIUS VANDERBILT, JR., Defendant.

Supreme Court, Special Term, New York County, February 18, 1955.

*Monroe J. Winsten* and *Charles J. Raskin* for plaintiff.

*Sol A. Rosenblatt* and *Charles Roden* for defendant.

D<small>I</small> F<small>ALCO</small>, J. This is an action by the plaintiff against her husband for a separation on the grounds of cruelty, abandonment and nonsupport. Defendant interposed, as an affirmative defense constituting a bar to this action, a final decree of absolute divorce which he obtained from planitiff on June 30, 1953, in the State of Nevada. Plaintiff challenged the *bona fides* of

defendant's domicile in Nevada, thereby attacking the validity of that decree. The evidence of the parties was taken in respect thereof and, at the conclusion of that phase of the case, I rendered my decision. (207 Misc. 291.) The decision is herein incorporated by reference. I found for the defendant and dismissed plaintiff's complaint on that issue, namely — that the Nevada decree constituted a bar to plaintiff's action for separation.

However, though her action has been dismissed for the reasons stated, plaintiff makes claim for maintenance pursuant to the provisions of section 1170-b of the Civil Practice Act. Accordingly, the proof of the parties was taken as to their finances, income, and plaintiff's needs, in the event I resolve this issue of maintenance in her favor. Section 1170-b is a statute of recent enactment (L. 1953, ch. 663). The present action appears to be the first of its kind in respect of the issues raised as to the validity, application and constitutionality of the statute. The precise question has not as yet been squarely determined in any discovered decision of our courts. In view of the novel and legal issues presented, a study and analysis of the statute, its background and origin, is necessary. Defendant contends that section 1170-b may not lawfully be applied to the facts as are here presented and, in any event, contends the statute is unconstitutional.

The facts adduced at the trial before me are the following: The parties were married in Connecticut in September, 1948; at the time of the marriage defendant was domiciled in Nevada and plaintiff was domiciled in California; a few months after the marriage the parties became jointly domiciled in California. They separated in September, 1952. Plaintiff, in October, 1952, commenced a prior separation action against defendant in this court, which was dismissed by order of this court dated February 27, 1953, on the determination that plaintiff, as of October 1, 1952, had not resided continuously for one year in the State of New York before the commencement of that action. Thereafter, the defendant procured a decree of absolute divorce against plaintiff on June 30, 1953, in Nevada. That decree was obtained ex parte and plaintiff did not appear or answer therein. Plaintiff thereafter, still continuing her residence and domicile in the State of New York, commenced this present action for separation against the defendant; her complaint is verified April 5, 1954, and avers that plaintiff was a resident continuously for more than one year prior to the commencement of the action (Civ. Prac. Act, § 1165-a, subd. 3); plaintiff was therefore a resident

of this State at the time of the effective date of section 1170-b; defendant was served by order of publication herein, and, on the same date that the order for publication was made, an order of sequestration was granted herein, directing the seizure by the receiver named of defendant's property within the State of New York; the receiver thereupon acquired custody and control of moneys and property of the defendant and is still holding such property and moneys. Pending the publication afore-mentioned, defendant, on April 30, 1954, appeared specially herein and moved to dismiss this action for lack of this court's jurisdiction over his person and of the subject matter of the action, and, further, to vacate the order of sequestration, which motion was denied in all respects; thereafter, on July 1, 1954, defendant interposed his answer preserving his special appearance and objections to the jurisdiction of this court over his person and the subject matter herein. Plaintiff moved for an award of alimony and counsel fee *pendente lite,* which was denied to the extent of the alimony but allowed a counsel fee of $2,500 (further reference to the award will be hereinafter made). The trial proceeded before me; the validity of defendant's Nevada decree was not successfully attacked by plaintiff. I then, as afore-stated, took proof upon plaintiff's application for maintenance pursuant to section 1170-b. One of the issues raised by defend-ant is whether or not, upon the facts adduced, plaintiff comes within the application of section 1170-b. Did the Legislature intend this statute to cover a factual situation such as is pre-sented by plaintiff? In my opinion, the statute is framed in unambiguous language and appears to be clearly applicable to plaintiff. It reads as follows: " § 1170-b. *Maintenance of wife where divorce or annulment previously granted on non-personal jurisdiction.* In an action for divorce, separation or annulment, or for a declaration of nullity of a void marriage, where the court refuses to grant such relief by reason of a finding by the court that a divorce, annulment or judgment declaring the marriage a nullity had previously been granted to the husband in an action in which jurisdiction over the person of the wife was not obtained, the court may, nevertheless, render in the same action such judgment as justice may require for the main-tenance of the wife. The court, by order, at any time thereafter upon the application of either party to the action, after due notice to the other, to be given in such manner as the court shall direct, may annul, vary or modify such judgment. Subject to the provisions of section eleven hundred and seventy-one-b of this act, the authority granted by this section shall extend to

unpaid sums or installments accrued prior to the application as well as to sums or installments to become due thereafter.''

Defendant contends (1) that this is not a proper case to which section 1170-b applies because plaintiff completed her one year of legal residence in this State (Civ. Prac. Act, § 1165-a, subd. 3) after section 1170-b was enacted and after a valid divorce was obtained by the defendant; (2) that neither party had a marital domicile here in the State of New York and that plaintiff is not a '' New York wife '' intended by the Legislature to be protected by this statute; and (3) that, in any event, section 1170-b is unconstitutional for the reasons that it discriminates against foreign divorces and denies the defendant, a nonresident, protection of the laws equal to that afforded New York husbands.

The starting point in this discussion must necessarily be to consider the Legislature's intent when it enacted section 1170-b. I have had occasion to discuss inquiry into legislative intent, in the case of *Art Steel Co.* v. *Velazquez* (201 Misc. 141, affd. 280 App. Div. 76), at page 144, as follows: '' The intent with which statutes are enacted ' is to be collected from the context, from the occasion and necessity of the law, from the mischief felt, and the objects and remedy in view ' (1 Kent's Commentaries 462; see, also, McKinney's Cons. Laws of N. Y., Book 1, Statutes [1942 ed.], § 95). Our Court of Appeals has pointed out that courts ' do not merely read the bare end product of the legislative labors ' but rather ' read the statute in the light of the state of facts which were found by the Legislature, and which prompted the enactment ' (*St. Nicholas Cathedral of Russian Orthodox Church in America* v. *Kedroff*, 302 N. Y. 1, 31); and that ' statutes, directed against known and stated evils, are not to be stretched to cover situations having no regard or reasonable relation to those evils ' (*Metropolitan Life Ins. Co.* v. *Durkin*, 301 N. Y. 376, 381).'' I turn, therefore, to a study of the background of the statute in question to ascertain the objects and remedies which prompted the Legislature of the State of New York to enact section 1170-b of the Civil Practice Act.

It is now well established, since the decision of the United States Supreme Court in the second case of *Williams* v. *North Carolina* (325 U. S. 226), that under the full faith and credit clause of the Constitution a sister State is required to give full faith and credit to an ex parte decree of divorce obtained in another State only to the extent that the decree of divorce adjudicated the marital *res* and marital *status* of the parties. As a result of this decision experience thereafter proved that sister States were confronted with the problem of providing

financial assistance to abandoned wives, in the face of the recognition of a husband's ex parte divorce. Were they to be left helpless by such foreign ex parte decrees? The courts have sought to meet and alleviate the situation by an ever-broadening approach and consideration to these legal and social problems. Experience and wisdom have gradually resolved a more realistic approach thereto, whittling away at former old-fashioned legalistic barriers. It is obvious today, in the light of more broadened decisional law, that the judicial process, working itself through the constant, ever-changing problems presented, is making decided headway in solving the dilemma of the Bench, Bar and legal writers in this field of law. In this evolution of the law our United States Supreme Court recently evolved and enunciated the principle that a divorce decree obtained in a sister State, where the wife was not present and who had not been served with process in that State, and who did not appear in that action, need not be given full faith and credit to the extent of relieving the husband from his obligation to support his wife, although that decree may be valid to dissolve the marital status of the parties. These principles are now firmly established by the cases of *Esenwein* v. *Commonwealth* (325 U. S. 279); *Estin* v. *Estin* (334 U. S. 541), and *May* v. *Anderson* (345 U. S. 528). In the *Estin* case (*supra*), the husband's argument that his obligation to support his wife terminated with the legal dissolution of the marriage as soon as the relationship of husband and wife no longer existed was answered in the majority opinion at pages 547 to 549, as follows: '' New York was rightly concerned lest the abandoned spouse be left impoverished and perhaps become a public charge. The problem of her livelihood and support is plainly a matter in which her community had a legitimate interest. * * * The result in this situation is to make the divorce divisible — to give effect to the Nevada decree insofar as it affects marital status and to make it ineffective on the issue of alimony. It accommodates the interests of both Nevada and New York in this broken marriage by restricting each State to the matters of her dominant concern.''

Mr. Justice DOUGLAS, who wrote the majority opinion in the *Estin* case, also wrote the prevailing opinion in the first *Williams* case (317 U. S. 287), and wrote a concurring opinion in the *Esenwein* case (*supra*) where he pointed out that it was important to preserve the basic distinction between the concept of marital capacity and the concept of support for the wife, and that the *Williams* case involved only the issue of marital capacity. At page 282 of the *Esenwein* case we find the following: '' We

held in *Williams* v. *North Carolina*, 317 U. S. 287, that a Nevada divorce decree granted to a spouse domiciled there was entitled · to full faith and credit in North Carolina. That case involved the question of marital capacity. The spouse who obtained the Nevada decree was being prosecuted in North Carolina for living with the one woman whom Nevada recognized as his lawful wife. Quite different considerations would have been presented if North Carolina had merely sought to compel the husband to support his deserted wife and children, whether the Nevada decree had made no provision for the support of the former wife and children or had provided an amount deemed insufficient by North Carolina. In other words, it is not apparent that the spouse who obtained the decree can defeat an action for maintenance or support in another State by showing that he was domiciled in the State which awarded him the divorce decree.'' Mr. Justice Douglas continued (pp. 282–283) : '' It is one thing if the spouse from whom the decree of divorce is obtained appears or is personally served. See *Yarborough* v. *Yarborough*, 290 U. S. 202; *Davis* v. *Davis*, 305 U. S. 32. But I am not convinced that in the absence of an appearance or personal service the decree need be given full faith and credit when it comes to maintenance or support of the other spouse or the children. See *Pennoyer* v. *Neff*, 95 U. S. 714. The problem under the full faith and credit clause is to accommodate as fully as possible the conflicting interests of the two States. * * * The question of marital capacity will often raise an irreconcilable conflict between the policies of the two States. See *Williams* v. *North Carolina, supra.* One must give way in the larger interest of the federal union. But the same conflict is not necessarily present when it comes to maintenance or support. The State where the deserted wife is domiciled has a deep concern in the welfare of the family deserted by the head of the household. If he is required to support his former wife, he is not made a bigamist and the offspring of his second marriage are not bastardized.''

The New York State Law Revision Commission confronted with the problem presented conducted a very thorough and exhaustive inquiry and analysis of these precedents and enunciations of the statutes and decisional law of the courts. The commission prepared a very comprehensive report wherein it recommended the enactment of the new statute — § 1170-b of the Civil Practice Act. It would be unnecessary and burdensome to repeat either *in haec verba* or even in resumé the report (N. Y. Legis. Doc., 1953, No. 65 [K]), but at page 6 thereof it is stated: '' The Commission believes that legislation is neces-

sary to protect a New York wife whose right to support from her husband may now be completely cut off by an *ex parte* foreign divorce decree, in the absence of a previous New York separation decree with provision for maintenance. In order to avoid discrimination against foreign divorces, against which the *Estin* opinion warned, such legislation should be made applicable whether the husband's *ex parte* adjudication of marital status was obtained in a foreign court or a New York court. The Commission therefore recommends that the Civil Practice Act be amended by the addition of a new section 1170-b ''.

The report analyzes the case of *Estin* v. *Estin* (*supra*), which pointed out the injustice to a New York wife whose husband obtained a divorce in another State in an ex parte proceeding, and stated, that unless she had been able to get a separation order with maintenance, prior to the foreign divorce, she has no remedy. The report further emphasizes the following: that under the Civil Practice Act, maintenance of the wife may be granted only as an incident to relief in a matrimonial action, and since 1883, it has been accepted law that there is no inherent power in the Supreme Court to grant maintenance to a wife independent of statutory authority (*Ramsden* v. *Ramsden,* 91 N. Y. 281); that (report, p. 5) an order for maintenance of a wife, after a foreign divorce decree, is not obtainable in the Domestic Relations Court of the City of New York (N. Y. City. Dom. Rel. Ct. Act, §§ 91, 137; *Adler* v. *Adler,* 192 Misc. 953); and, furthermore, that by the recent amendment to the Civil Practice Act (§ 1170-a) the Supreme Court was authorized to render judgment with respect to the custody and maintenance of children where divorce, separation, annulment or a declaration of nullity of a void marriage has been denied for any reason other than lack of jurisdiction; that the legislation proposed (§ 1170-b) complements section 1170-a by extending similar protection to wives and the relief will be enforcible in the same manner as in any other matrimonial action (report, p. 5).

Of decided further interest on the subject is the portion of the report (p. 12) in respect of the situation in our Domestic Relations Court. It is pointed out that in the case of *Adler* v. *Adler* (*supra*), a petition was filed in the Domestic Relations Court by a wife, whose husband had obtained a valid foreign divorce decree, apparently ex parte, wherein she sought support under the Domestic Relations Court Act. The petition was '' regretfully '' dismissed for lack of a New York judgment prior to separation. Such a prior judgment has been held in the Domestic Relations Court to be within the protection of the

*Estin* rule by one justice of that court (*Gittelman* v. *Gittelman,* 192 Misc. 334) and denied by another (" *Morton* " v. " *Morton* ", 199 Misc. 547) in view of the language of subdivision 1 of section 137 of the Domestic Relations Court Act of the City of New York.

The holdings thus indicate the basic difficulty in our court is that statutory authority is lacking to grant alimony except pursuant to the matrimonial actions specified in the Civil **Practice** Act (§§ 1140, 1155, 1164, 1169–1170), and since the oft-cited case in 1883 (*Ramsden* v. *Ramsden, supra*), it has been accepted law that there is no inherent power in the Supreme Court to grant support for the wife. Further, at page 13 of the report it is stated: " Since, therefore, the Children's Court Act does not authorize support for wives generally, the Domestic Relations Court can order support only for wives who have not been divorced, and the Supreme Court is limited to statutory actions, none of which authorize support for a spouse whose marriage has already been dissolved by a foreign decree, the New York courts do not appear to have jurisdiction to compel support despite a valid foreign divorce decree."

With this background and collation of decisional law presented by the commission, showing the need for affirmative legislation on the subject, our Legislature thereupon enacted section 1170-b of the Civil Practice Act. As stated at page 3 of the report: " Its purpose is to authorize the Supreme Court to provide for the maintenance of a wife where the husband had previously obtained a divorce, annulment, or a declaration of nullity of a void marriage from a court which did not have jurisdiction over her person."

I am convinced that plaintiff comes within the purview and protection of this statute. She has been a domiciliary and resident of this State for more than a year prior to the commencement of this suit (April 5, 1954). She was, therefore, a resident at the time of the effective date of section 1170-b (April 13, 1953), and entitled to bring this action under subdivision 3 of section 1165-a of the Civil Practice Act. Defendant procured his ex parte divorce in Nevada on June 30, 1953. Concededly, plaintiff was not served in Nevada and did not appear or answer in that action. The present dismissal of plaintiff's separation action was made, as I pointed out, solely by reason of the bar of defendant's prior Nevada decree, which was not here successfully challenged by plaintiff. In view of the report and recommendations of the Law Review Commission for the enactment of section 1170-b of the Civil Practice Act, I am persuaded that the language of the statute clearly encompasses plaintiff.

Defendant's contention that the statute will induce wives in foreign States to come to New York State to take advantage thereof, is not merely fallacious, it is completely without basis and untenable. The situation, if ever it proved of such consequence as to require remedy, would, of course, necessarily be the subject of legislative attention — not of the court. The present enactment is, in my opinion, clear and unambiguous. If the Legislature had other intentions, it could have clearly provided therefor and specified, as a requisite to relief under the statute, a period of residence or other requirements in this State by a wife prior to her suit in the face of the ex parte foreign divorce decree obtained by her husband. The matter of discrimination was covered in the recommendations of the Law Review Commission, and, with that before it, I cannot but conclude that the Legislature intended this statute to apply to ex parte adjudications rendered in New York courts as well as those obtained in foreign courts. Defendant's attack on the constitutionality of the statute is rejected. The constitutionality of section 1170-b, in effect, was predetermined by the United States Supreme Court in the decisions hereinbefore referred to, wherein the doctrine of divisible divorce is enunciated. Section 1170-b is a New York State codification of that doctrine in our statute law, and the incorporation thereof is a part of the public policy of this State.

It is further significant to note the following language in " *Morton* " v. " *Morton* " (199 Misc. 547), at page 557: "Doubtless it would be consonant with the full faith and credit clause and within the New York State constitutional power of the Legislature to have enacted the bill, introduced and killed at the 1948 session (Sen. Int. No. 2366, Print No. 2611), which would have added to the Civil Practice Act a new section to provide that ' when the last joint matrimonial domicile was within the State of New York, and the husband acquires domicile or residence outside of the State and obtains a valid separation or divorce decree and the wife neither appeared nor was served in jurisdiction thereof, the wife shall have a cause of action for support and for education and maintenance of the children of the marriage.' "

This statute containing specific restrictions was defeated. The bill as eventually passed (Civ. Prac. Act, § 1170-b) is a much broader, all-inclusive statute, with no limitations or restrictions whatever. It embraces plaintiff. Defendant argues that plaintiff does not come within the application of the statute because both parties are not domiciliaries of this State, or that plaintiff

is not a domiciliary of the State, and that the statute applies only to New York domiciliaries where the marital domicile was in this State and the husband had departed therefrom. I am not disposed to accept defendant's narrow construction of section 1170-b. His argument is without basis in the record. The facts are established that, although the parties had been married in Connecticut, that was neither the domicile nor residence of defendant or plaintiff. Their mode of life was one of constant luxurious travel, with periodic places of residence or domicile. They took up a short residence or domicile in California after the marriage. There is proof in the record that at one time these parties had looked for an apartment in New York. I cannot subscribe to defendant's argument that plaintiff may not achieve her own domicile or residence in any State she chooses, after the separation of the parties under the circumstances and facts disclosed. My conclusion is not overcome by the arguments of defendant which ignore the factual situation presented by plaintiff. Plaintiff had as much right to establish a domicile or residence here, which she did, as did defendant in Nevada. Defendant failed and refused to support plaintiff, and returned to the State of Nevada for the purpose of re-establishing his domicile and there instituted his divorce action against plaintiff. She was not obligated to follow and pursue defendant to Nevada. Plaintiff had lived here before, had been living here for a period of time when separated from defendant, and she met the legal requirements for the institution of this separation action. Moreover, as heretofore pointed out, defendant's motion to dismiss this separation suit, on the ground plaintiff was not a resident, was denied.

I am of the opinion, therefore, that plaintiff is entitled to maintenance pursuant to the provisions of section 1170-b. By reason of the order of sequestration, this court may grant plaintiff allowances for her maintenance and counsel fees out of the funds and property seized and held by the receiver (*Matthews* v. *Matthews*, 240 N. Y. 28; *Geary* v. *Geary*, 272 N. Y. 390).

Coming now to the amount of the maintenance to be awarded, it is undisputed that, except for a small amount, plaintiff has not received any support or maintenance from the defendant during the pendency of this action nor since the parties have been separated. It is further undisputed that plaintiff is presently receiving the sum of $400 monthly from a charitable institution and that is her sole means of income and support. She is ill and has with her a minor child of a previous marriage.

The sum to be awarded this plaintiff is not to be measured or circumscribed by the amount of the charitable aid she received. Section 1170-b does not present any new or different standard for making an award to a wife for her maintenance. Defendant's contention that section 1170-b " wholly fails to provide any standard or measure for the amount of maintenance allowable " is without merit. The standard of maintenance, it appears, is an amount " as justice may require ". Section 1170 of the Civil Practice Act provides for the support and maintenance of a wife who obtains a judgment of separation or divorce against her husband and states, in the same words as are used in section 1170-b, that the court may grant such maintenance and support for the wife " as justice requires ". Despite defendant's contention, plaintiff is not in the same category as a wife whose marriage has been annulled. Plaintiff's rights are the same as they were before the defendant procured his Nevada decree of divorce. The distinction between plaintiff's status and that of a wife whose marriage has been annulled is that, in the case of the annulment, the decree adjudicates that there never had been a valid marriage from its very beginning, whereas in the plaintiff's situation there was a valid marriage and defendant's obligation to support plaintiff survived the ex parte Nevada divorce decree. Since plaintiff's right to maintenance has not been affected by the Nevada decree and is fully protected by section 1170-b, plaintiff is entitled to an award for her maintenance. I hold as being without merit defendant's argument that plaintiff may be awarded only such sum, if any, as will prevent her from becoming a public charge. Nor do I feel that plaintiff is entitled to be maintained in the standard of luxurious life and travel which she enjoyed while married to defendant. She is no longer privileged or required, as she was while married to defendant, to accompany him on his extensive trips and voyages, his lavish entertainment and mode of living, all of which necessitated large expenditures for clothes, traveling, hotels, entertainment, as more fully testified to by plaintiff and described in the record. Neither of these extremes is the test to be now applied. In my opinion, in light of the record before me, plaintiff is entitled now to maintenance in such amount " as justice requires ".

Studying the Report of the Law Revision Commission, I find the words " maintenance " and " support ", as used throughout, have the same connotation; they are used interchangeably and no different meaning is either ascribed, stated or implied. Funk & Wagnalls New Standard Dictionary defines the words as

follows: " *maintenance*, 1. The act of maintaining, in any sense; as, *maintenance* of a family; * * * 2. That which supports or sustains; means of support."

" support, * * * 3. To supply means for the maintenance of; furnish with what is needed; provide for; as, to *support* * * * a family. * * * Syn: bear, carry, * * * maintain. * * * To *maintain* is to keep in a state or condition, especially in an excellent and desirable condition * * *. To *support* may be partial, to *maintain* is complete; *maintain* is a word of more dignity than *support*. * * * 2. That which supports, maintains, or upholds. * * * 3. One who or that which furnishes a livelihood to a person or family; a source or means of living; also, subsistence; sustenance; living. 4. A maintaining in continuance ".

The evidence established defendant's income and financial status to be substantial. He is the beneficiary of the income of several trusts, the particulars of which are more fully stated in the record. Furthermore, defendant enjoys additional income from his lectures and writings.

In view of the foregoing, I find and decide that plaintiff is entitled to maintenance in the sum of $250 weekly, and to an additional counsel fee of $3,500 which includes expenses incurred. The order of Special Term stated that the allowance there of counsel fee was made " without prejudice to a review at the trial of this cause, of the nature, extent and reasonable value of the services heretofore rendered and hereafter to be rendered by plaintiff's counsel in this action, and to the making of an additional allowance therefor if, at that time, the court deems it proper." The services of plaintiff's attorney were necessary. The amount previously awarded proved inadequate. Plaintiff's counsel testified that, of the sum of $2,500 awarded, he incurred expenses of approximately $1,500. Defendant argues that, since plaintiff is an unsuccessful litigant, her complaint having been dismissed, she is not entitled to a counsel fee. Plaintiff's separation was denied solely by reason of the bar of defendant's ex parte Nevada decree. This action is brought both for separation and maintenance. The denial of the separation did not terminate this action, for it continued in respect of plaintiff's application for maintenance and the determination of her right to maintenance under the statute discussed, both in law and in fact.

This constitutes the decision of the court pursuant to section 440 of the Civil Practice Act.

Settle judgment accordingly.